UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 5:08-CV-352-KKC

DELGASCO, INC.,                                                                                    PLAINTIFF,

v.                                              **OPINION AND ORDER**

CITIZENS GAS UTILITY DISTRICT
of Scott and Morgan Counties, Tennessee,                                      DEFENDANT.

**** **** **** ****

This matter is before the Court on the Motion to Dismiss (Rec. No. 5) filed by the Defendant

Citizens Gas Utility District ("Citizens Gas") in which Citizens Gas asks the Court to dismiss this

action for lack of personal jurisdiction or, alternatively, to transfer the action to the U.S. District

Court for the Eastern District of Tennessee.

I.        FACTS.

The Plaintiff Delgasco is a Kentucky corporation.  The Defendant Citizens Gas is a utility

district formed under Tennessee law.  The parties entered into an agreement, effective November 1,

2003, by which Delgasco agreed to sell and Citizens Gas agreed to buy natural gas for approximately

10 years.

The agreement provides that some of the gas – called "Winter Gas"– would be bought and

sold on a "firm basis" and that the rest of the gas – called "Excess Gas" – would be bought and sold

on an "interruptible basis." According to the Complaint, Citizens Gas sells the Winter Gas to its

customers and some of the Excess Gas is sold to East Tennessee Natural Gas, LLC ("East

Tennessee") for its use in a pipeline located in Tennessee, Virginia, North Carolina, and Georgia.

There is no dispute that Citizens Gas has no offices in Kentucky.  All of its customers are

located in Tennessee. The East Tennessee pipeline does not enter Kentucky.  The portion of the gas that Citizens Gas purchases and stores is stored in tanks in Tennessee.  Title to the natural gas that Citizens Gas purchases under the agreement with Delgasco transfers to Citizens Gas upon delivery in Tennessee.

In its Complaint, Delgasco alleges that East Tennessee has informed Citizens Gas that, because of certain regulatory changes, it will no longer purchase gas from Citizens Gas.  The parties agree that the regulatory changes constitutes an event of "force majeure" under the agreement, relieving Citizens Gas of the obligation to purchase from Delgasco the "Excess Gas" which it sold to East Tennessee.  However, Delgasco argues that Citizens Gas is not relieved of its obligations under the contract to purchase Winter Gas on a firm basis or to purchase Excess Gas that is sold to customers other than East Tennessee. In its Complaint, Delgasco asks the Court for a declaration that the event of force majeure only relieves Citizens Gas of its obligation to purchase Excess Gas that is sold to East Tennessee.

With the motion before the Court, Citizens Gas asserts that this matter should be dismissed because the  Court lacks personal jurisdiction over it.  Alternatively, it moves the Court to transfer this matter to a more convenient venue, i.e., the U.S. District Court for the Eastern District of Tennessee.

## II.     JURISDICTION.

### A.     Standard.

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff has the burden of establishing personal jurisdiction. *Id*. In responding to such a motion, the plaintiff cannot

"stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

The court has three options for deciding a 12(b)(2) motion prior to trial: 1) the court can decide the motion upon the affidavits alone; 2) the court can permit discovery to decide the motion; or 3) the court can conduct an evidentiary hearing to resolve any factual disputes. *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)(quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).

If all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction, the court need not conduct an evidentiary hearing before dismissing the claim. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997). A prima facie showing means that the plaintiff only has to present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)(quoting *Data Disc, Inc. v. Systems Technology, Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). In determining whether the plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

The determination that the plaintiff has made the prima facie showing of jurisdiction necessary to survive a motion to dismiss does not relieve him from ultimately having to prove jurisdiction by a preponderance of the evidence if the defendant again raises the jurisdictional issue

3

later in the action. *Serras*, 875 F.2d. at 1214 (even if court issues pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean*, 134 F.3d at 1272 (defendant "can raise jurisdictional arguments during the trial as well.  It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

If the court conducts an evidentiary hearing to resolve relevant factual disputes, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Dean*, 134 F.3d at 1272. Finally, if there are no factual disputes regarding the jurisdiction issue, then the court need not conduct a hearing but can decide on the pleadings and affidavits whether the plaintiff has established jurisdiction by a preponderance of the evidence. *Id*. (where "the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery. . . plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.").

Neither party in this case has requested discovery on the issue of jurisdiction or an evidentiary hearing to resolve relevant factual disputes.  Thus, to resolve Citizens Gas's Motion to Dismiss, the Court will determine whether, taking all of Delgasco's allegations as true, it has made the necessary prima facie showing of jurisdiction.

### B.    Analysis.

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l*

4

*Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)(citation omitted). "The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution." *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). Thus the single issue presented on a motion to dismiss for lack of personal jurisdiction is whether the jurisdiction sought by the plaintiffs is within the requirements of due process. *Id.* at 543; *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982).

> The following criteria are used to determine personal jurisdiction in the Sixth Circuit: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

 *Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"If these criteria are satisfied, jurisdiction is appropriate if maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tobin*, 993 F.2d at 543 (citations and internal quotation marks omitted).

It is clear that this Court's personal jurisdiction over Citizens Gas cannot be established solely on the fact that it entered into a contract with a Kentucky corporation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)("[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). In *Burger King*, the Court directed courts to consider "prior negotiations and contemplated future consequences, along with the

5

terms of the contract and the parties' actual course of dealing." 471 U.S. at 479.

   According to Delgasco, the relationship between the parties extends back to 1995 and began with a serious of gas purchase contracts which culminated in the contract at issue in this action. Pursuant to the relationship, Delgasco alleges that it has sold more than $87 million of natural gas to Citizens Gas.

   The contract at issue itself establishes a ten-year relationship and calls for or causes regular systematic contacts between the Defendant in Tennessee and the Plaintiff in Kentucky. The contract requires Delgasco to provide Citizens Gas with a substantial amount of natural gas and, in turn, requires Citizens Gas to pay Delgasco a substantial sum. These are not random, fortuitous or attenuated contacts. According to the Affidavit of Brian S. Ramsey submitted by Delgasco, thus far, the agreement between the parties has already caused Citizens Gas to pay Delgasco more than $62 million for natural gas. According to Citizens Gas, the contract calls for it to pay Delgasco an additional $31 million over the next five years.

   Ramsey states that Citizens Gas representatives have traveled to Williamsburg, Kentucky multiple times for meetings between the parties. Ramsey further asserts that Citizens Gas representatives must enter Kentucky at least once per month if not more to inspect the facility where Citizens Gas accepts delivery of gas from Delgasco. The facility is located on or near the border between Kentucky and Tennessee.

   Further, Ramsey states that, as part of the ongoing relationship between the parties, Delgasco performs, in Winchester, Kentucky, gas control and monitoring services for Citizens Gas. This requires Citizens Gas to send data continuously via the Internet to Winchester, Kentucky where the data is received and analyzed by Delgasco. These services call for Delgasco personnel in Kentucky

6

to call Citizens Gas personnel in Tennessee if Delgasco detects an alarm on Citizens Gas's system.
Ramsey states that Citizens Gas personnel regularly call Delgasco in Kentucky to obtain information
about Citizens Gas's own system.

With these actions, Citizens Gas  purposefully availed itself of the privilege of acting in
Kentucky or causing a consequence here.  Furthermore, Delgasco's cause of action arises from
Citizens Gas's activities in Kentucky.  "Only when the operative facts of the controversy are not
related to the defendant's contact with the state can it be said that the cause of action does not arise
from that contract."  *Southern Mach.*, 401 F.2d at 384 n.29.  "Both the first and second prongs are
met when a dispute arises from a substantial business contract with a corporation based in another
jurisdiction."  *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.
1982).  The cause of action seeks a declaration of the parties' rights under  a contract.  Accordingly,
the cause of action necessarily arises from Citizens Gas's actions of entering into a substantial
business contract and relationship with a Kentucky corporation

 "[O]nce the first two questions have been answered affirmatively, resolution of the third
involves merely ferreting out the unusual cases where that interest cannot be found."  *Southern
Mach. Co.*, 401 F.2d at 384.  "When the first two elements are met, an inference arises that the third,
fairness, is also present; only the unusual case will not meet this third criterion."  *Brewer*, 680 F.2d
at 1126. Given Citizens Gas's activities in Kentucky, this Court's exercise of jurisdiction over it  is
reasonable.  Furthermore, the contract at issue contains a Kentucky choice-of-law clause which
makes it all the more foreseeable that Citizens Gas would be haled into court in Kentucky to resolve
a contractual dispute such as the one at issue in this action.  "The parties having elected to invoke
the benefits of [Kentucky] law for deciding disputes under the contract, there is obviously much to

7

be said in favor of letting such disputes be resolved in a [Kentucky] court." *LAK, Inc. v. Deer Creek Enterprise*, 885 F.2d 1293, 1295 (6th Cir. 1989).

In support of its argument that this Court lacks jurisdiction over it, Citizens Gas cites *LAK, Inc. v. Deer Creek Enterprise*, 885 F.2d 1293 (6th Cir. 1989) and *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997).  However, these cases are distinguishable from this case.  In *Kerry*, the court noted that the contract at issue did not establish an "on-going" or "continuing" relationship but instead represented only an "isolated transaction."  106 F.3d at 151. Likewise, in *LAK*, the court noted that the contract at issue involved a single, "one-shot" purchase and not a "continuing relationship."  885 F.2d at 1296.  Furthermore, the contract at issue in *LAK* contained a choice-of-law clause designating a state other than the forum state.  *Id.* at 1295.

Citizens Gas also cites *Calphalon Corporation v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) in which the Sixth Circuit determined that an Ohio court did not have jurisdiction over  a Minnesota resident ("Rowlette") who entered into an agreement with an Ohio corporation ("Calphalon") requiring him to be Calphalon's exclusive sales representative in Minnesota, Iowa, North Dakota, South Dakota, and Nebraska.  *Id.* at 720.  Rowlette had been Calphalon's representative for 16 years – from 1980 to 1996 –  pursuant to a letter agreement.  Then, in 1996 and 1997, the parties entered into two one-year agreements.  *Id.*  The dispute at issue involved the 1997 agreement which provided it would be governed by Ohio law. *Id.*  Rowlette corresponded with Calphalon in Ohio via phone, fax and mail and visited Ohio twice.  *Id.*

In finding that  Rowlette nonetheless did not satisfy the purposeful availment prong of the jurisdictional analysis, the Sixth Circuit did not consider the entire 18-year relationship between the parties but focused only on the "mere existence of a contract between Rowlette and an Ohio citizen

8

for seventeen months." *Id* at 722.  The Court further focused on the fact that the contract called for Rowlette to sell Calphalon's products in states other than Ohio and did not call for him to exploit the Ohio market for cookware. *Id*. at 723.

The court's jurisdictional analysis focused almost solely on the markets the sales representative was required to exploit, determining that jurisdiction did not exist in Ohio because the representative was not required to exploit that state's market.  This case, however, does not involve a sales representative hired to exploit particular state markets.  This case involves an approximately 10-year contract that required on-going and continuous contacts with a Kentucky corporation.

For all these reasons, the Plaintiff has established a prima facie case of jurisdiction and the Motion to Dismiss will be denied.

### III.    TRANSFERRING VENUE.

In the alternative, the Defendant asks the Court to transfer this matter to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1]  The decision requires an "individualized, case-by-case consideration of convenience and fairness," *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), and the Court has broad discretion to decide whether or not to transfer a case. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

Courts within the Sixth Circuit have identified nine factors which should be considered when ruling upon a motion to transfer venue under 28 U.S.C. § 1404(a):

---

[1]The parties do not dispute that the suit could have been brought in the Eastern District of Tennessee.

> (1) the convenience of witnesses; (2) the location of relevant documents and relative
> ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of
> the operative facts; (5) the availability of process to compel the attendance of
> unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity
> with the governing law; (8) the weight accorded the plaintiff's choice of forum; and
> (9) trial efficiency and the interests of justice, based on the totality of the
> circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F.Supp.2d 722, 729 (E.D. Mich., 2006).

The moving party generally bears the burden of showing that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight. *MSDG Mobile, LLC v. American Federal, Inc.*, 2006 WL 515531, at *6, (W.D. Ky Feb. 28, 2006). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)(citing Gulf *Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Furthermore, a motion to transfer venue under 1404(a) cannot be used simply to shift the inconveniences of litigation from the defendant to the plaintiff. *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F. Supp 2d 783, 789 (S.D. Ohio 2005).

Citizens Gas argues this matter should be transferred because "all of the operative events occurred in Tennessee." Namely, Citizens Gas argues that its customers are located in Tennessee and Tennessee is where it prepares the natural gas for resale. However, this dispute involves the proper interpretation of the force majeure provision in the contract. The state where Citizens Gas's customers are located and where it prepares the natural gas for resale is irrelevant to this dispute. As the parties to the contract at issue are located in Kentucky and Tennessee, the operative events occurred in both of those states. Thus, this factor does not favor either Tennessee or Kentucky.

Citizens Gas argues that the "convenience of the witnesses" favors transferring this matter to Tennessee because non-party witnesses reside in Tennessee. Namely, Citizens Gas argues that

the companies which oversee and direct the purchase of natural gas along the East Tennessee pipeline are located in Tennessee.  However, to the extent that such testimony is relevant and that such witnesses would be unwilling to attend trial in Kentucky or would be inconvenienced by attending trial in Kentucky, their testimony may be secured by deposition pursuant to Fed. R. Civ. P 32(a)(4)(B).

Citizens Gas also argues that this matter should be transferred to Tennessee because that state has an interest in the quality of natural gas transmitted to its residents.  Delgasco has not disputed that resolution of this matter will ultimately affect the quality of the gas transmitted to Citizens Gas's Tennessee customers and Tennessee does have an interest in that issue. However, this case is fundamentally about the interpretation of the contract and the parties agreed that Kentucky law would govern such matters.  This Court is likely more familiar with the governing law than a Tennessee court would be.

Considering all the relevant factors, the Court finds that Citizens Gas has failed to carry its burden of showing that the balance strongly favors transferring this matter to the Eastern District of Tennessee.  The Court therefore declines to transfer this case.

### IV.    CONCLUSION.

For all these reasons, the Court hereby ORDERS that the Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Transfer of  Venue (Rec. No. 5) is DENIED.

Dated this 25th day of February, 2009.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**